Gilmore v. NH Secretary of State      CV-94-477-M 02/24/97
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


Gary Gilmore, Calvin Warburton,
Stephanie Micklon, and Robert Cushing,
      Plaintiffs,

      v.                                     Civil No. 94-477-M

New Hampshire Secretary of State,
      Defendant.


                        **MEMORANDUM DECISION**


      Plaintiffs are voters and candidates for elective office in

New Hampshire.  They challenge the constitutionality of that

section of New Hampshire's election laws that prescribes the

format for the state's general election ballot.  The statutory

provision at issue provides that:


      The name of each candidate shall be grouped according
      to the party which nominates the candidate, and the
      names of the candidates of the party which received the
      largest number of votes at the last preceding state
      general election shall be listed first.

N.H. Rev. Stat. Ann. ("RSA") § 656:5,II (1996).


      Plaintiffs assert that by requiring the names of the

candidates of the party which received the largest number of

votes in the preceding general election to be listed first on the

ballot, the state has awarded an unfair "positional advantage" to

those first-listed candidates, at least with respect to candidates for election to the New Hampshire General Court (Legislature). Plaintiffs claim that a candidate whose name appears first on a ballot will receive a substantial number of votes from citizens who are uninformed and uninterested in the issues and candidates; those voters who habitually vote for persons whose names appear at the top of a list of candidates just because their names are at the top. Belief in the existence of that phenomenon is not uncommon, particularly among those experienced in electoral processes. It is generally referred to as the "windfall vote" or, less kindly, the "donkey vote," insofar as people casting such votes "uncritically check off whom[ever] is at the top of the ballot, especially if that candidate is also an incumbent." Clough v. Guzzi, 416 F. Supp. 1057, 1063 (D. Ma. 1976).

Plaintiffs assert that because New Hampshire generally votes Republican, Republican candidates are routinely benefitted in the electoral process by the statutorily mandated higher ballot positioning, to the detriment of Democratic and Libertarian Party candidates. Plaintiffs argue that there is no rational basis upon which the State might justify its ballot structuring requirement which, they say, can only be explained as an attempt

2

to insure Republican dominance in New Hampshire electoral politics.

The court earlier denied preliminary injunctive relief (document no. 7) on grounds that, <u>inter alia</u>, plaintiffs were not likely to succeed in establishing the existence of a ballot "positional advantage" in New Hampshire's general elections. The court also noted that the existence of a federal constitutional right to a "fair share" of the so-called "windfall vote" arising from ballot position alone was, at best, questionable. The parties have since tried the case on the merits to the court, which considered new evidence and, by stipulation of the parties, evidence which was previously presented upon application for the preliminary injunction. Fed. R. Civ. P. 65.

<u>Discussion</u>

Plaintiffs assert that New Hampshire's ballot structuring law violates their rights under the First and Fourteenth Amendments to the United States Constitution because it effectively:

1)   imposes unreasonable restrictions and burdens on minority party candidates;

2)   dilutes the effective weight of votes cast for minority party candidates; and

3)      gives an unfair advantage to majority party
        candidates by insuring that "irrational" votes
        (those based solely on the candidate's ballot
        position) go to the majority party.

Plaintiffs seek permanent injunctive relief prohibiting the New Hampshire Secretary of State from formatting general election ballots in accordance with the statute's requirements, and compelling the Secretary to format ballots in a manner that fairly rotates ballot position.

Plaintiffs' case fails to pass muster for two independent reasons. First, they have produced insufficient evidence to persuade the court by a preponderance that either a demonstrable or reasonably quantifiable advantage arises solely from a party's or candidate's position on the New Hampshire general election ballot. Second, plaintiffs do not have a federal constitutional right to a general election ballot structured in a manner which, as nearly as possible, evenly distributes the so-called "irrational" votes — votes supposedly cast for candidates

positioned higher on the ballot simply and solely because their names appear higher on the ballot.

A. Positional Effect

Whether the position of a candidate's name on a ballot has a measurable or quantifiable effect on voter behavior in a particular voting district is a factual matter, Sangmeister v. Woodward, 565 F.2d 460, 465 (7th Cir. 1977); McLain v. Meier, 637 F.2d 1159, 1166 (8th Cir. 1980), which is not susceptible to judicial notice. New Alliance Party v. N.Y. State Bd. of Elections, 861 F. Supp. 282, 288 (S.D.N.Y. 1994). Plaintiffs have failed to meet their burden of proof in that they have not established the fact of positional advantage relative to New Hampshire's general election ballot. Their case rested substantially on Professor Carolyn Mebert's expert opinion that there was a positional advantage to the majority party in New Hampshire's general elections. But Professor Mebert was not persuasive, particularly given her candid acknowledgment of her own inexperience in applying statistical methodology to political science problems, her concessions that her first two studies were substantially flawed, and her own apparent lack of confidence in the reliability of her final study. The court does not accept her study or conclusions as either reliable or valid.

5

Defendant, on the other hand, offered the expert opinion of Dr. Robert Darcy, whom the court found persuasive. Dr. Darcy testified that while some positional advantage might exist in primary elections, and that such an effect could occur in some non-partisan and certain other types of "exotic" elections, no reliable statistical/political science study has yet demonstrated, to a reliable degree of certitude, the existence of a positional advantage in a partisan general election. Moreover, Dr. Darcy pointed to a number of factors that would tend to minimize or eliminate so-called irrational voting and, thus, any positional advantage in New Hampshire's general elections, i.e. the New Hampshire ballot is formatted according to a traditional and familiar organizing principle — party affiliation; the ballot is structured logically and clearly by office and candidates' names; and the ballot includes recognized symbols of party affiliation to aid voter recognition of both candidates and the parties with whose positions they generally align themselves.

On balance, considering all the evidence presented, the court finds that plaintiffs failed to establish by a preponderance of the evidence that a demonstrable or reliably quantifiable positional advantage results from implementation of RSA 656:5,II's ballot formatting requirement.

B.   Constitutional Issues

Voting is assuredly a fundamental and precious right that "rank[s] among our most precious freedoms."  Williams v. Rhodes, 393 U.S. 23, 30 (1968).  "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." Burdick v. Takushi, 504 U.S. 428, 441 (1992) (quoting Wesberry v. Sanders, 376 U.S. 1, 17 (1964)); See also Reynolds v. Sims, 377 U.S. 533, 555 (1964).  But, even the right to vote is not absolute; some regulation is necessary to give meaningful effect to that right:

> "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order rather than chaos, is to accompany the democratic process."  Storer v. Brown, 415 U.S. 724, 730 (1974).  To that end, each state retains the authority to regulate state and local elections . . . .  See Sugarman v. Dougall, 413 U.S. 634, 647 (1973); see also U.S. Const. Art. I, § 4, cl. 1 (directing that states shall prescribe "[t]he Times, Places and Manner of holding Elections for Senators and Representatives").

Werme et al. v. Merrill, Governor, et al., 84 F.3d 479, 483 (1st Cir. 1996).

In this case, were the court to assume that plaintiffs had established that adherence to New Hampshire's ballot formatting

7

law does result in a positional advantage, it would then become necessary to assess "'the character and magnitude of the asserted injury, to the plaintiffs' constitutionally protected rights and then 'evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule.'" <u>Werme</u>, 84 F.3d at 483 (citations omitted).  This is so because, under the analytical framework prescribed by the Supreme Court, the level of scrutiny applied to determine the constitutionality of the challenged election law "corresponds roughly to the degree to which [the law] encumbers First and Fourteenth Amendment rights." <u>Id.</u>

> Under this standard, the rigorousness of [the] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights.  Thus, as we have recognized when those rights are subject to severe restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance.  But when a state election law provision imposes only reasonable nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions.

<u>Id.</u> at 483-84 (quoting <u>Burdick v. Takushi</u>, 504 U.S. 428, 534 (1992)) (citations and internal quotation marks omitted).

In a closely analogous case, <u>New Alliance Party v. N.Y. State Bd. of Elections</u>, <u>supra</u>, Judge Ward of the Southern

8

District of New York considered a similar constitutional challenge to New York's ballot format. New York law bases a candidate's ballot position on his or her parties' electoral performance in the previous gubernatorial election. The court held that, even accepting plaintiff's contention of position bias:

> All that plaintiff really alleges is that its opportunity to capture the windfall vote has been impeded. While access to the ballot may, at times, be afforded constitutional protection, access to a preferred position on the ballot so that one has an equal chance of attracting the windfall vote is not a constitutional concern. Indeed, it should not be. The constitution does not protect a plaintiff from the inadequacies or the irrationality of the voting public; it only affords protection from state deprivation of a constitutional right. "Voters have no constitutional right to a wholly rational election, based solely on a reasoned consideration of the issues and the candidates' positions, and free from other 'irrational' considerations as a candidate's ethnic affiliation, sex, or home town."

New Alliance Party, 861 F. Supp. at 295 (quoting Clough v. Guzzi, 416 F. Supp. 1057, 1067 (1976)).

As a factual matter, the court has found that plaintiffs have failed to demonstrate by a preponderance of evidence any positional advantage in the New Hampshire general elections. Nevertheless, even accepting plaintiffs' contention of positional bias, this court agrees with Judge Ward that "access to a

9

preferred position on the ballot so that one has an equal chance of attracting the windfall vote is not a constitutional concern." Id.; see also Strong v. Suffolk County Bd. of Elections, 872 F. Supp. 1160, 1164 (E.D.N.Y. 1994) ("With respect to the substantive law governing this case, the defendants are correct in contending that there is no constitutional right under the equal protection clause to a favorable ballot position.").

Taking the matter even another step further, however, and assuming both positional advantage and some impact on a protected constitutional right, plaintiffs still cannot prevail. Even if some burden upon plaintiffs' Fifth and Fourteenth Amendment rights is assumed to result from New Hampshire's ballot formatting rules, the degree and nature of that burden is both slight and easily justified by the state's interest in "organizing a comprehensible and manageable ballot . . . [—] one where the parties, officers and candidates are presented in a logical and orderly arrangement." New Alliance Party, 861 F. Supp. at 296. See also Bd. of Election Commissioners v. Libertarian Party, 591 F.2d 22, 25 (7th Cir. 1979) ("Different treatment of minority parties that does not exclude them from the ballot, prevent them from attaining major party status if they achieve widespread support, or prevent any

10

voter from voting for the candidate of his choice, and that is reasonably determined to be necessary to further an important state interest does not result in a denial of equal protection.").

At most, New Hampshire's ballot format subjects plaintiffs' rights, as they construe those rights, to reasonable and nondiscriminatory restrictions. "A statute that positions parties in all races based on performance in the prior . . . election assists voters by constructing a symmetrical pattern on the ballot." New Alliance Party, 861 F. Supp. at 297. First, the formatting law is nondiscriminatory in that every political party in New Hampshire has the same opportunity to attain a "preferential" ballot position -- all they need do is garner the most votes in the preceding general election. Second, the ballot format does not deny ballot access, does not adversely affect anyone's right to cast a vote, and does not affect the counting of votes that are cast.

Given the slight and indirect burden imposed -- at most a deprivation of a fair share of a very limited "irrational vote" (or a concomitant "dilution" of supposed "rational votes" cast for those candidates below the first position) — and the

11

substantial justifications for bringing some clear, nondiscriminatory, rational, and logical order to the ballot and the electoral process, the level of constitutional scrutiny properly applied to New Hampshire's formatting law is "rational basis" — i.e., has the defendant Secretary shown that the formatting law is grounded in reason?  He has.

This is a case in which the "State's important regulatory interests are . . . sufficient to justify" the formatting provision.  Burdick, 504 U.S. at 434.  Under New Hampshire law, plaintiffs (or, the parties they support) enjoy an equal opportunity to attain what they perceive to be a preferential spot on the general election ballot, but, "that success is to be won at the polls rather than in a federal court."  Werme, 84 F.3d at 487.

## Conclusion

Judgment shall be entered on the merits in favor of defendant.

12

**SO ORDERED.**

 

 

_____
Steven J. McAuliffe
United States District Judge

February 24, 1997

cc:   Michael B. King, Esq.
      Christopher P. Reid, Esq.